## WINGATE *v.* HAMILTON and Another.

*A.*, in 1850, bound himself by title-bond to *B.*, to convey to him certain town lots by a good and sufficient warranty deed, on the payment of the first instalment of the purchase-money, &c. Before the bond was executed, an agent of *A.*, without his knowledge, had sold one of the lots to *C.* In a suit by *B.* against *A.*, for specific performance—

*Held*, that *A.* could not be compelled to execute to *B.* a deed for the lot which had thus been sold by *A.*'s agent.

*Held*, also, that *B.* had the option to take a conveyance of the lots to which *A.* could not make him a title, and have an abatement of the purchase-money as to the one sold to *C.*; or to abandon the contract altogether.

*Held*, also, that it was requisite, under the bond, that the deed from *A.* to *B.* should contain a relinquishment of *A.*'s wife's dower, and that, in the decree for specific performance, it should have been provided that her dower should thus be relinquished, and that, in the event of her refusal, there should be a proper abatement of the purchase-money.

APPEAL from the *Clay* Circuit Court.

PERKINS, J.—Bill in chancery, under the old practice, for the specific performance of the condition of a bond reading as follows:

"Know all men that I, *William R. Hamilton*, of the county of *Peoria*, state of *Illinois*, do hereby bind myself, my heirs, &c., to make unto *Robert M. Wingate*, of *Clay* county, *Indiana*, a good and sufficient warranty deed to the following lots in *Bowling-Green, Clay* county, *Indiana*, viz.: Out-lots numbers one and twenty-seven, on the plat of said town. Also, lots numbers eight, and three, and four, in block number six; and lot number five in block number three.

"Now, the above obligations are upon these conditions, viz.: The said *Robert M. Wingate* has this day given to said *Hamilton* two notes, each for 125 dollars, the first payable on the 25th of *December* next, and the second on the 25th of *December*, 1851. Now, if the said *Wingate* pays the first of said notes when due, and gives such personal security for the payment of the other as said *Hamilton* may be satisfied with, then said *Hamilton* shall convey to said *Wingate* the above-described property; otherwise," &c. "*August* 26, 1850.

"It is hereby stipulated that the said *Hamilton* shall still be bound to make the deed above described, if said *Wingate* is ready, at *Bowling-Green*, and remains so until a demand is made to comply with his part of the agreement. *August* 26, 1850. *William R. Hamilton.*"

The bill shows that *Wingate* was ready, at *Bowling-Green*, on the coming due of the first note, to perform all things required of him by the contract, but that *Hamilton* failed to execute, or offer to execute, a deed. It further alleges that *Hamilton*, on the 17th of *October*, 1850, in fraud of the complainant's right, sold said lot number eight to one *McCarty*, who resold the same to one *John Carr* for 600 dollars. It charges that *McCarty* knew of the previous purchase by complainant. It alleges that complainant had been in possession of the lots named, except a part of that sold to *McCarty*, and had made valuable improvements. The bill further shows that a suit was commenced against *Hamilton*, soon after his default, the papers in which were destroyed by a fire which con-

sumed the clerk's office. It makes *Hamilton* and *McCarty*
parties, and prays for special and general relief.

*McCarty* and *Hamilton* answered, and their answers, for
the purposes of this investigation, may be taken as complete denials of the allegations in the bill.

The cause was submitted to the Court upon the pleadings, proofs, &c., and a decree rendered which will be noticed as we proceed.

The evidence proved the bond as set out in the bill, and that the complainant had, at the proper time, fully complied, or offered to comply, with the obligations on his part.

But it was further proved that the agent of *Hamilton*, at *Bowling-Green*, had sold said lot number eight to *McCarty*, prior to its sale by *Hamilton* himself, who was at *Peoria, Illinois*, to *Wingate;* that *McCarty* paid, at his purchase, a part of the consideration, took possession and made improvements, and was in possession when *Wingate* left *Bowling-Green* for *Peoria*, to make the purchase of *Hamilton*. The value of lot number eight, unimproved, and the value of *McCarty's* improvements, were shown, and the price for which he sold to *Carr*.

It appears in the pleadings and evidence, that said *Hamilton* had a wife, who is still living.

The Court decreed that *Hamilton* should convey to *Wingate* all the lots named in the bond, except number three, which seems to have been omitted by mistake, and said lot number eight; that for that *Wingate* should be credited on his notes for the whole 110 dollars, the proved value of said lot, and that on the failure of *Hamilton* to convey, a commissioner might be appointed, &c. The decree did not require *Hamilton's* wife to join in the deed, or provide for any deduction in the amount to be paid by *Wingate*, should she refuse so to join.

*Wingate* complains of this decree, because it does not include said lot number eight. But the decree in this particular is right. *Hamilton* could not make the title to that lot to *Wingate*, because it was, previous to the purchase by the latter, legally sold to *McCarty;* and as this fact

was known to *Wingate*, had he obtained the legal title, he would have held it only as a trustee for *McCarty*.

It thus being impossible for *Hamilton* to convey to *Wingate* all the lots purchased by the latter, the most that *Wingate* could do was to take a conveyance for the portion that *Hamilton* could make title to, and have an abatement of the purchase-money as to the remainder. He had his election between this course and an abandonment of the contract altogether. 2 Story's Eq., pp. 105, 106, s. 779.

*Wingate* also complains of the decree, because it only provided for a deed from *Hamilton*, without the relinquishment of dower by his wife, and made no provision for an abatement of the purchase-money, on her refusal to join.

This complaint is well founded. The contract required a deed with the relinquishment of dower, if a right to dower existed. *Linn* v. *Barkey*, ante, p. 69. *Wingate* might have accepted a deed from *Hamilton* alone, and relied upon his covenants. And had he done so, he could not have recovered damages till he had been disturbed in his possession; though according to the case of *Baker* v. *Railsback*, 4 Ind. R. 533, he might, in that state of facts, have extinguished the inchoate dower right, for a reasonable sum, and set it off against unpaid purchase-money.

But *Wingate* "was not bound to receive a deed, even with general warranty, unless the wife joined in the conveyance, extinguishing her contingent interest." *Rawle* on Covenants for Title, 139. Hence, if *Wingate* demanded such a deed, and *Hamilton* could not make it, he should submit to a proportional abatement in the purchase-money, on the former accepting a deed without such relinquishment. And in such an application to a Court as the present case presents, for a deed, it might be proper to join the wife with the husband in the suit, that her rights might, if possible, be settled and barred in the proceeding.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*J. P. Usher*, for the appellant.